IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| REX ANDREW WHITLOCK, | :: | MOTION TO VACATE |
|    Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 4:08-CR-44-RLV-WEJ-1 |
| UNITED STATES OF AMERICA, | :: | |
|    Respondent. | :: | CIVIL ACTION NO. |
| | :: | 4:13-CV-309-RLV-WEJ |

**FINAL REPORT AND RECOMMENDATION**

This matter has been submitted to the undersigned Magistrate Judge for consideration of movant pro se Rex Andrew Whitlock's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 [119-2] ("Motion to Vacate"), and the government's Response [122]. For the reasons stated below, the undersigned **RECOMMENDS** that the Motion to Vacate be **DENIED**, and that the Court **DECLINE** to issue a certificate of appealability.

**I.    PROCEDURAL HISTORY**

A federal grand jury returned a two-count indictment against Mr. Whitlock and co-defendant Tray Deandrea Galbreath, charging them in Count One with conspiracy to possess with the intent to distribute at least five kilograms of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C.

§§ 841(a)(1), (b)(1)(A)(ii), and 846; and in Count Two with aiding and abetting each other with possession with intent to distribute at least five kilograms of a mixture and substance containing a detectable amount of cocaine, in violation of §§ 841(a)(1), (b)(1)(A)(ii) and 18 U.S.C. § 2. (Indict. [3].) Represented by retained attorneys Bruce S. Harvey, Jennifer S. Hanson, and K. Julie Hojnacki, Mr. Whitlock moved to suppress certain evidence seized during and following a traffic stop. (Mot. to Suppress [15].) After an evidentiary hearing (Suppression Hr'g Tr. [34]), the undersigned issued a Non-Final Report and Recommendation ("R&R") [40] that the motion to suppress be denied. The District Court adopted the R&R over Mr. Whitlock's Objections [49]. (Order of June 15, 2009 [51].)

Mr. Whitlock entered a negotiated guilty plea to Count One, reserving his right to appeal the denial of his suppression motion. (Guilty Plea and Plea Agreement [75-1]; Plea Tr. [121].) The Court sentenced Mr. Whitlock to 120 months of imprisonment. (J. [81].) After Mr. Whitlock's attorneys failed to file a direct appeal, Mr. Whitlock filed a pro se Motion to Vacate [84], arguing that his attorneys were ineffective for failing to appeal the denial of his suppression motion. The government agreed (Resp. [87]), and the Court vacated the conviction and reimposed the sentence. (R&R [88]; Order of Feb. 8, 2012 [89].)

Represented by new court-appointed counsel Mark A. Yurachek, Mr. Whitlock appealed his conviction, arguing that: (1) "his traffic stop was unsupported by probable cause; and (2) he was unlawfully detained during the traffic stop." United States v. Whitlock, 493 F. App'x 27, 27 (11th Cir. 2012) (per curiam). The United States Court of Appeals for the Eleventh Circuit summarized the relevant facts as follows:

> On August 22, 2008, Chris Day, a Deputy with the Bartow County Sheriff's Office, initiated a traffic stop of a car that appeared to have illegal window tint and was following another car too closely. Tray Deandrea Galbreath was the driver, and Whitlock was his passenger. During the traffic stop, Deputy Day's K-9, Remi, performed an external sniff search of the car, and he alerted to the presence of narcotics. Shortly thereafter, Deputy Day searched the car and discovered cocaine.
>
> . . .
>
> At the suppression hearing, Deputy Day testified to the circumstances surrounding the traffic stop. Deputy Day was working "criminal interdiction" on I-75 in a marked patrol car, along with Remi and another officer, "Deputy Gifford." At approximately 3:55 p.m., Deputy Day initiated a traffic stop of a gold Pontiac Bonneville ("Bonneville") with a Tennessee license plate. Deputy Day was parked on the side of I-75 when he saw the Bonneville "slow [ ] noticeably down below the normal flow of traffic" and make several unnecessary lane changes. After noticing that the car also had illegal window tint, he pulled onto the highway, turned on his blue lights, and initiated the traffic stop.

3

When Deputy Day first saw the Bonneville, it was traveling in the middle lane of I-75, and the flow of traffic was approximately 75 miles-per-hour. The Bonneville was driving slower than the flow of traffic at approximately 50 to 55 miles-per-hour. After Deputy Day pulled out into traffic, the Bonneville moved one lane to the right, and Deputy Day was driving behind it. The Bonneville then changed lanes back to the original lane, and it was "less than one car length" behind another car. Deputy Day did not recall whether the other car was traveling with the flow of traffic, but when the Bonneville changed lanes, it was "practically right on the other car's bumper." If the other car's driver had hit the brakes, "there would have been a car accident." Once Deputy Day observed this lane change, he initiated the traffic stop immediately.

Deputy Day approached the Bonneville from the passenger side, and he asked Galbreath, the driver, to exit the car to discuss the reasons for the traffic stop. Next, Deputy Day determined that the car's window tint tested at 18 percent, which is illegal in Georgia. As this time, Deputy Day planned to write a warning citation for both the illegal window tint and for following too closely, and he began writing it while speaking with Galbreath, but he did not complete it. While writing the citation, Deputy Day asked Galbreath for consent to search the Bonneville, but Galbreath refused consent.

At this time, Deputy Gifford exited the patrol car and asked Whitlock to step out of the Bonneville so Deputy Day could have Remi conduct an exterior sniff of the vehicle, which took approximately a minute. During the search, Remi showed several alerts, indicating that he detected the odor of narcotics. Remi then gave a "final indication" at the trunk by sitting down on the passenger side of the trunk area. Deputy Day then searched the Bonneville and discovered approximately eight kilograms of cocaine in the trunk. After discovering the drugs, Deputy Day arrested Galbreath and Whitlock. At some point after the arrests, the information from the license check was returned.

> The government admitted the videotape of the traffic stop into evidence, which showed that Remi's sniff search began at 4:01 p.m., he sat down near the trunk at 4:02 p.m., and Whitlock was arrested at 4:04 p.m. Although the conversations on the video were inaudible, the visual depiction of the traffic stop was consistent with Deputy Day's testimony. Only the police radio inside the patrol car was sometimes audible during the recording. The video did not show Deputy Day when he was writing the warning citation or when the citation was complete. Further, the video did not indicate when the results of the license check were returned.

Id. at 27-29. On October 19, 2012, the United States Court of Appeals for the Eleventh Circuit affirmed Mr. Whitlock's conviction, concluding that Deputy Day "had probable cause to believe that violations had occurred" and that this Court did not err in crediting the deputy's testimony. Id. at 30. The Eleventh Circuit further found that the traffic stop, which lasted seven minutes from the time Deputy Day stopped the car until Remi alerted to the drugs, was not unreasonably long. Id. at 31-32.

Mr. Whitlock timely filed the instant Motion to Vacate, arguing that his counsel was ineffective for: (1) not investigating possible exculpatory information in the traffic stop; (2) not arguing that there was no dominion or constructive possession of the drugs found in the car; (3) not timely filing an appeal; (4) not challenging probable cause for the stop; (5) not challenging the chain of evidence of the cocaine; (6) not challenging deficiencies in the indictment based on the lack of probable cause for the warrantless search and seizure; (7) cumulative errors and conflict of interest;

5

(8) cumulative errors that resulted in prejudice; (9) the change in law regarding the crack-to-cocaine ratio; (10) not challenging the lack of a search warrant or consent to search the vehicle; (11) not challenging the ownership of the car and possession of the drugs; (12) not developing a buyer/seller relationship; and (13) not presenting mitigating evidence at sentencing, which led to the imposition of a disproportionate sentence. (Mot. Vacate 4-11.) The government responds that Mr. Whitlock's grounds for relief lack merit. (Resp. 10-28.)

## II.   DISCUSSION

### A.   Legal Standards

A federal prisoner may file a motion to vacate his sentence

> upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Based on the record before the Court, the undersigned **REPORTS**

6

that an evidentiary hearing is not required in this case. See Diaz v. United States, 930 F.2d 832, 834 (11th Cir. 1991) (noting that, although a prisoner seeking collateral relief is entitled to an evidentiary hearing if relief is warranted by the facts he alleges, which the court must accept as true, a hearing is not required if the record conclusively demonstrates that no relief is warranted).

The standard for evaluating ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Eagle v. Linahan, 279 F.3d 926, 938 (11th Cir. 2001) (applying Strickland to allegations of ineffective assistance of appellate counsel). The analysis is two-pronged. However, a court need not address both prongs "if the defendant makes an insufficient showing on one. Strickland, 466 U.S. at 697. A defendant asserting a claim of ineffective assistance of counsel must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. A court analyzing Strickland's first prong must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992) ("We also should always presume strongly that counsel's performance was reasonable and adequate . . . .") (citation omitted). Counsel is not

AO 72A
(Rev.8/82)

incompetent so long as the particular approach taken could be considered sound strategy. Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc); see also Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) ("[A] petitioner seeking to rebut the strong presumption of effectiveness bears a difficult burden."). "[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (internal quotation marks and citation omitted).

Second, a defendant must demonstrate that counsel's unreasonable acts or omissions prejudiced him. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. In order to demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; see also Eagle, 279 F.3d at 943 ("To determine whether the [unreasonable] failure to raise a claim on appeal resulted in prejudice, we review the merits of the omitted claim.").

8

### B.     Ground One: Counsel's Failure to Investigate Exculpatory Evidence

In ground one, Mr. Whitlock states that the information for the traffic stop "was gathered by government informants" and argues that counsel failed to investigate possible exculpatory evidence or interview those informants. (Mot. Vacate 6-7.) Mr. Whitlock provides no factual or evidentiary support for this argument, and the record shows that Deputy Day made the decision to stop the vehicle because it was following another vehicle too closely and had a window tint violation.  See Whitlock, 493 F. App'x at 28, 30-31.

> Counsel cannot manufacture evidence, and the Constitution does not require the presentation of evidence that does not exist.  Nor does counsel have a duty to ask questions implying facts that he knows are not true.

Schwab v. Crosby, 451 F.3d 1308, 1321 (11th Cir. 2006).  Moreover, Mr. Whitlock cannot show prejudice on this ground because, even if there was a government informant who provided information on Mr. Whitlock's and his co-defendant's drug activities, that would have provided Deputy Day with additional probable cause for the traffic stop.  Accordingly, Mr. Whitlock is not entitled to relief on ground one.

9

### C. Grounds Two and Eleven: Counsel's Failure to Challenge <u>Possession of the Cocaine</u>

In ground two, Mr. Whitlock asserts that counsel should have argued that he "had no knowledge, constructive, or dominion possession of" the cocaine. (Mot. Vacate 7.) In ground eleven, Mr. Whitlock claims that counsel should have argued that he was only a passenger in the vehicle and that his co-defendant possessed the drugs. (<u>Id.</u> at 10.) However, Mr. Whitlock once again fails to provide any factual details to support these grounds. Counsel did argue, and the evidence showed, that Mr. Whitlock was a passenger in the vehicle. (Mot. to Suppress 2); <u>see also</u> <u>Whitlock</u>, 493 F. App'x at 28. The Court construes these grounds as an attack on the validity of Mr. Whitlock's guilty plea, and they fail because Mr. Whitlock has not alleged prejudice, i.e., "that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 57, 59 (1985) (citations omitted); <u>see also</u> <u>Gilreath v . Head</u>, 234 F.3d 547, 551 (11th Cir. 2000) (movant has burden of affirmatively proving prejudice). Moreover, to the extent that Mr. Whitlock is not challenging his guilty plea, the plea waives all challenges to the factual basis underlying his conviction and all other non-jurisdictional challenges. <u>United States v. Tome</u>, 611 F.3d 1371, 1379 (11th Cir. 2010).

### D.   Grounds Three, Four, Six, and Ten:  Direct Appeal and Warrantless Traffic Stop

In ground three, Mr. Whitlock contends that his counsel was ineffective for not timely filing a direct appeal.  (Mot. Vacate 4, 7.)  However, the Court previously granted Mr. Whitlock the relief he sought on this claim when it vacated his conviction, reimposed the sentence, and allowed him to file a direct appeal.  (R&R; Order of Feb. 8, 2012.)  Mr. Whitlock is not entitled to further relief on this ground.

In grounds four, six, and ten, Mr. Whitlock maintains that counsel was ineffective for not arguing that the warrantless traffic stop was not supported by probable cause and that no one consented to the search of the vehicle.  (Mot. Vacate 4, 8-10.)  These grounds are belied by the record, as counsel raised these issues in both the motion to suppress and on direct appeal.  (Mot. to Suppress); Whitlock, 493 F. App'x at 27.  The substantive issues underlying these ineffective assistance claims, including the search of the vehicle, were rejected on direct appeal, and Mr. Whitlock does not allege what more counsel could have done to succeed on these claims. "Conclusory allegations of ineffective assistance are insufficient."  Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (citation omitted).  Furthermore, "[t]he district court is not required to reconsider claims of error that were raised and disposed

11

of on direct appeal." United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) (citation omitted). This includes claims that movant has "merely re-characterized" because "[a] rejected claim does not merit rehearing on a different, but previously available, legal theory." Id. (citation omitted). Thus, Mr. Whitlock is not entitled to relief on grounds four, six, and ten. Bannister v. United States, No. 08-81228-CIV, 2009 WL 3561697, at *20 (S.D. Fla. Oct. 30, 2009) (finding that presentation of claim, which was raised and rejected on direct appeal, "in the guise of an ineffective assistance of counsel claim" does not warrant § 2255 relief).

### E. Grounds Five and Seven: Counsel's Failure to Challenge the Chain of Custody of the Cocaine and Alleged Conflict of Interest

Next, in ground five, Mr. Whitlock argues that counsel "was ineffective for not [reviewing or] contesting Police law reports about drugs seized at crime scene." (Mot. Vacate 8.) Mr. Whitlock speculates, without factual or evidentiary support, that "[h]ad the true quantity and quality of seized drugs been challenged and revealed . . . the outcome at trial could have been different." (Id.) In ground seven, Mr. Whitlock alleges–again without factual or evidentiary support–that his counsel had a conflict of interest. (Id. at 9.) These conclusory allegations do not establish that Mr. Whitlock's attorneys provided him ineffective assistance. Wilson, 962 F.2d at 998.

### F. Grounds Seven and Eight: Counsel's Cumulative Errors

Next, Mr. Whitlock contends that he is entitled to relief based on counsel's cumulative errors. (Mot. Vacate 9-10.) "The cumulative error doctrine 'provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal.'" United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) (citation omitted). In addressing cumulative error, a court must first examine each claim individually and then examine any error in the aggregate and the trial as a whole to determine whether a defendant was afforded a fundamentally fair trial. United States v. Calderon, 127 F.3d 1314, 1333 (11th Cir. 1997). Because Mr. Whitlock has not demonstrated that counsel made any errors, there can be no cumulative error, and these grounds fail. See Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012) (concluding that habeas petitioner's cumulative error claim failed because none of his individual claims of error had any merit and, thus, there was "nothing to accumulate").

### G. Ground Nine: Crack-to-Cocaine Ratio

In ground nine, Mr. Whitlock references, without explanation, the change in crack-to-cocaine law. (Mot. Vacate 10.) Mr. Whitlock was convicted of a cocaine

13

offense, and the law for cocaine offenses has not changed. At the time of his plea, Mr. Whitlock faced a mandatory minimum sentence of ten years of imprisonment and a possible maximum sentence of life imprisonment. (Plea Tr. 9.) That remains the law today. See 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii) (providing ten-year mandatory minimum sentence for cocaine offenses involving five kilograms or more). The Sentencing Guidelines for cocaine offenses also have not changed. See U.S.S.G. § 2D1.1(c)(4) (providing that base offense level of 32 applies to offenses involving between five and fifteen kilograms of cocaine). Thus, the change in law regarding crack offenses does not affect Mr. Whitlock's sentence, and this ground fails.

### H. Ground Twelve: Counsel's Failure to Develop a Buyer-Seller Relationship

Next, Mr. Whitlock asserts that counsel was ineffective for "developing buyer/seller relationship without any trial preparation." (Mot. to Vacate 10.) Mr. Whitlock's position as to this point is less than clear. However, Mr. Whitlock was charged with being a drug trafficker, not a buyer or a seller. Mr. Whitlock has simply not alleged facts to show that counsel was ineffective or that he somehow suffered prejudice as to this ground.

14

I.     **Ground Thirteen:  Counsel's Assistance at Sentencing**

Lastly, Mr. Whitlock maintains that counsel provided him ineffective assistance at sentencing by failing to investigate and present mitigating evidence and that, as a result, he received a disproportionate sentence.  (Mot. Vacate 10-11.)  Mr. Whitlock does not identify what "mitigating evidence" existed that would have resulted in a lower sentence.  Once more, Mr. Whitlock's conclusory assertion that counsel provided him ineffective assistance does not entitle him to relief.  Wilson, 962 F.2d at 998.  Moreover, Mr. Whitlock's mandatory minimum sentence–120 months of imprisonment for conspiracy to possess with the intent to distribute at least five kilograms of cocaine–did not violate the constitution.  See United States v. Cruz, 300 F. App'x 686, 687-88 (11th Cir. 2008) (per curiam) (concluding that defendant's 121-month sentence for possession with intent to distribute five or more kilograms of cocaine was not disproportionate to her offense).  Thus, this ground also fails.

**III.   CERTIFICATE OF APPEALABILITY**

Under Rule 22(b)(1) of the Federal Rules of Appellate Procedure, "the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b)(1). "The district court must issue or deny a certificate of appealability when it enters a

15

final order adverse to the applicant." 28 U.S.C. foll. § 2255, Rule 11(a). Section 2253(c)(2) of Title 28 states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A movant satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). Based on the foregoing discussion of Mr. Whitlock's claims for relief, the resolution of the issues presented is not debatable by jurists of reason; thus, the Court should deny a certificate of appealability.

## IV.   CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Motion to Vacate [119-2] be **DENIED**, and that the Court **DECLINE** to issue a certificate of appealability.

The Clerk is **DIRECTED** to terminate the referral of the Motion to Vacate to the undersigned.

16

**SO RECOMMENDED**, this 21st day of April, 2014.

_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

17